STATE OF NORTH CAROLINA v. MARY WHITE

No. 823SC929

(Filed 6 September 1983)

**Homicide § 16— dying declarations—decedent's belief that he was dying**
     Decedent's statements to a deputy sheriff that defendant shot him and that he was dying were properly admitted as dying declarations where the court found that decedent believed he was dying when the statements were made, notwithstanding the doctors attending decedent believed that he was in no danger of dying and had assured him that he would recover.

APPEAL by defendant from *Reid, Judge.* Judgment entered 20 May 1982 in Superior Court, CRAVEN County. Heard in the Court of Appeals 9 March 1983.

The defendant, tried for the second-degree murder of Edward Sawyer, was convicted of voluntary manslaughter. The State's evidence tended to show that: The deceased, partially blind and elderly, was living in defendant's home, for which she received payments under a Social Services program; on the night in question they had been arguing because he wanted to go out and she did not want him to; defendant's son, residing nearby, heard two shots and found his mother holding a pistol in her hand

and Sawyer wounded, sitting on the living room sofa; one of the bullets lodged in the wall of the house, the other adjacent to his lower fourth rib after entering his right neck and going through the windpipe, esophagus and left lung, which collapsed. Sawyer, conscious all the while, was immediately taken to the hospital where he was examined and in a relatively simple procedure, taking only a few minutes, the doctors drained the internal bleeding and other fluids out of his chest cavity, enabling the collapsed lung to reinflate. Before, during and after that procedure, the doctors and nurses attending him assured Sawyer he was going to be all right.

While still in the emergency room, a few minutes after the procedure was completed, his condition stablilized and Deputy Sheriff Hamilton was allowed to question him briefly. Upon the Deputy Sheriff asking him what happened, Sawyer said several times, "Mary White shot me, I'm dying." And upon the Deputy Sheriff asking him why Mary White shot him, Sawyer said that she was mad at him because he had been out all day. The doctors who treated him were then of the opinion that he would recover and, so far as the record indicates, no one told him that the wound might be fatal. Sawyer's condition remained stable for approximately thirty-eight hours, but after that a massive, uncontrolled infection developed from the mouth germs that were discharged into the chest cavity from the ruptured esophagus, which was neither detected nor repaired in the initial examination and treatment, and he died eight days after the shooting.

Defendant testified that: Sawyer fired a pistol in the living room while she was in the kitchen; she ran into the living room, grabbed the gun from him, and it went off.

*Attorney General Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

*Sumrell, Sugg & Carmichael, by Rudolph A. Ashton, III, for defendant appellant.*

PHILLIPS, Judge.

Three of defendant's assignments of error, the only ones requiring discussion, relate to receiving the officer's testimony that the decedent told him he was dying and the defendant shot him.

She contends that Sawyer's statement was inadmissible hearsay, rather than a qualified dying declaration, in that Sawyer was not then in any real danger of dying and no doctor or medical attendant had told him that he was. The record certainly supports the defendant's contention that at the time Sawyer's statement was made the doctors who had examined and treated him believed that he would recover and was in no imminent danger of dying. Their belief was admittedly contingent, however, since they knew the bullet had entered one side of his body, lodged near the other side, and in the process had passed through "a very important area of the body," but did not then know whether any important structures or vessels had been damaged; and because of the unknown conditions, the doctors put him under the constant observation and care of nurses trained to detect internal injury from trauma. Nevertheless, their opinion, such as it was, was that the wound was not fatal and Sawyer would recover.

Though the opinions of the doctors that decedent was in no danger of dying when the statements were made are relevant to the question before us, they are not conclusive. The mental state that is decisive in determining whether an out-of-court statement qualifies as a dying declaration, of course, is that of the declarant, not his doctor. Before permitting the officer to testify as to Sawyer's statement, the judge conducted a thorough *voir dire* out of the jury's presence and made extensive findings of fact, the most pertinent of which, for the purposes of this appeal, was that: ". . . at the time the deceased made those statements or declaration, to Sheriff Hamilton the deceased in his own mind was conscious of approaching death and believed at the time that he was dying." Whether decedent's hearsay statement qualifies as a dying declaration is a decision for the trial judge in the first instance; a finding that such a statement was a dying declaration and thus admissible into evidence as an exception to the rule against hearsay, if supported by evidence, will not be disturbed on appeal. *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978).

That the decedent said he was dying is certainly some proof he believed he was. *State v. Hamlette*, 302 N.C. 490, 276 S.E. 2d 338 (1981). Had he just said it once would have sufficed, but according to the officer and the judge's findings, he said it several times, even after the officer told him the doctors were taking care of him. Nor were his words unsupported; a bullet had been pro-

pelled diagonally through vital parts of his body, and that he was in considerable danger of dying was self-evident, the optimism of the doctors notwithstanding; and being conscious, he knew the immediate reactions of his body and mind to his injury as no one else then did or could. That he chose to make his own assessment of his injury is understandable; that his belief was neither founded upon nor corroborated by professional knowledge and experience does not render it inoperative. *State v. Layton*, 204 N.C. 704, 169 S.E. 650 (1933). What renders a dying declaration worthy of belief is not that the conviction of impending death was scientifically arrived at, but that it was sincerely and steadfastly held. Having found that Sawyer, indeed, believed that he was dying when the statements were made, and that he died a few days later, the trial judge properly admitted the statements into evidence. *State v. Stevens, supra.*

Defendant's other assignments of error have been carefully considered, and in our opinion her trial was without prejudicial error.

No error.

Judges WELLS and JOHNSON concur.